UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: feb 2, 2017
```

Martin Amaro,

                    Plaintiff,

          —v—

Barbuto, LLC, *et al.*

                    Defendants.

16-CV-1581 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

On March 1, 2016, the Plaintiff, Martin Amaro, filed a complaint in the Southern District

of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, and the New York Labor Law ("NYLL"), Art. 19 §§ 190 and 650 *et seq. See* Dkt. No. 1

(hereafter, "Complaint").  On March 8, 2016, the parties informed the Court that they had

reached a settlement. *See* Dkt. No. 8.  On April 12, 2016, the parties submitted a written

settlement agreement for the Court's approval, along with a joint letter explaining their views on

the fairness of the settlement. *See* Dkt. No. 11 (hereafter "Joint Letter").  The settlement

agreement provides for a settlement fund of $5,000, of which $2,500, labeled "unpaid wages and

damages," will be distributed to Mr. Amaro, and $2,500 will be distributed to the Law Offices of

Robert L. Kraselnik as attorney's fees and costs. Dkt. No. 11, Ex. 1 ¶ 2 (hereafter "Settlement

Agreement" or "SA").  Although the settlement appears to be fair and reasonable, the Court

concludes that the parties have failed to submit sufficient information for the Court to properly

make such a determination.  Additionally, the Court cannot approve the settlement's

confidentiality provisions and attorney's fees provisions in their current form.  Approval of the

1

settlement is thus denied, with the understanding that if the parties address the Court's concerns and resubmit, the settlement will likely be approved.

## I.    LEGAL STANDARD

In order to serve the FLSA's purpose of ensuring "a fair day's pay for a fair day's work," settlements in FLSA cases must be approved by a court or by the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). As a result of this requirement, the Plaintiff's claims in this case cannot be dismissed with prejudice until the Court determines that the settlement is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A "fair and reasonable" settlement is one that "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (internal quotation marks omitted).

In order to fully evaluate the fairness of a proposed settlement, the Court must receive sufficient information from the parties as to "the bona fides of the dispute." *Id.* at *1 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). At a minimum, the Court thus must receive information describing "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). In evaluating the parties' proposed settlement, the Court will assess (1) the sufficiency of the information presented to the

Court supporting the estimate of the plaintiff's maximum recovery; (2) the non-disparagement and confidentiality provisions; and (3) the proposed award of fees and costs.[1]

## II.   DISCUSSION

### A.  The Sufficiency of the Information Presented to the Court

In the parties' joint letter, they conclude that, "[a]dding federal and state damages plus wage statement violations would result in a total of $4,250 if all of Plaintiff's allegations were accepted at trial and all possible damages were awarded." Joint Letter, at 1. The parties explain this number as follows: prior to filing the Complaint, the Plaintiff, accompanied by counsel, engaged in "extensive negotiations" with the Defendants. *Id.* As part of these negotiations, the Defendants provided to the Plaintiff for review comprehensive pay and time records kept by the Defendants. The Defendants argued that the Plaintiff was owed nothing. On the basis of these records, the Plaintiff determined he was owed "as much as $1,200 in unpaid wages." *Id.* The Court agrees that, assuming $4,250 to be a reasonable estimate of the Plaintiff's maximum recovery, and assuming the case to indeed not be clear cut (as the parties suggest in the letter), a $5,000 settlement reasonably accounts for the risks of litigation. Joint Letter at 2. At present, however, the Court lacks sufficient information to assess the reasonableness of this estimate.

First, though the parties provide a general overview of the methodology through which they arrived at this number, they do not indicate how many hours the Plaintiff believed he worked without being appropriately compensated, at what rate he should have or was paid for those hours, and by how much (or with what frequency) the Plaintiff was undercompensated or uncompensated. *See Banegas v. Mirador Corp.,* No. 14-CV-8491 (AJN), 2016 WL 1451550, at

---

[1] The Court notes that the release, which pertains only to wage and hour claims, is sufficiently narrow to be permissible. *See* SA ¶ 2; *see also Hyun v. Ippudo USA Holdings,* No. 14-CV-8706 (AJN), 2016 WL 1222347, at *4 (S.D.N.Y. Mar. 24, 2016).

*2 (S.D.N.Y. Apr. 12, 2016) (declining to approve a settlement where the parties failed to provide "each party's estimate of the number of hours worked and the applicable wage" (quoting *Mamani*, 2014 WL 2971050, at *1)). Further, though the parties indicate that the "Defendants took a no-pay position, alleging that Plaintiff occasionally forgot to clock out," whereas the Plaintiff's "review of the documents . . . indicated . . . that Plaintiff was arguably owed as much as $1,200 in unpaid wages," they do not indicate why the data could support both interpretations, nor whether the Defendants maintain that position. Joint Letter at 1. In resubmitting the proposal, the parties should provide a clearer description of how the Plaintiff arrived at his estimate of the maximum possible recovery and affirm whether the Defendants continue to dispute this number, so the Court can assess the reasonableness of the Plaintiff's number and the contours of the dispute.

Second, as to the statutory damages, the parties do not indicate how these damages were calculated. *See* Complaint ¶ 45 (alleging Plaintiff was owed $150 *a week* as a result of violations of the New York Wage Theft Prevention Act)). The Court is thus unable to assess the calculation's reasonableness.

Finally, the joint letter nowhere addresses the apparent discrepancy between the allegations in the Complaint and the assumptions in the joint letter. For example, in the Complaint, the Plaintiff alleges that the Defendant had a policy of not providing proper wage statements, *id.* ¶ 20, not paying the minimum wage, *id.* ¶18, not paying the proper overtime rate, *id.* ¶ 17, and failing to pay spread of hours premiums, ¶ 19. The joint letter, however, appears to indicate that the Plaintiff concedes that the only way he was improperly compensated pertained to "correct overtime compensation," without addressing any of these remaining allegations.

4

Joint Letter at 1. There are other examples, none of which is explained.[2] *See Banegas*, 2016 WL 1451550, at *2 (declining to approve a FLSA settlement absent explanation why the Plaintiff's estimates had significantly changed from those in the complaint).

## B. The Non-Disparagement and Confidentiality Provisions

Second, the settlement includes two provisions the Court deems problematic. First, the "[c]ooperation" provision states that "[the Plaintiff] and [Defendants] mutually agree that they will not disparage each other and will say or do nothing to bring discredit upon the other." SA ¶ 4. Second, the settlement includes a confidentiality provision that restricts the Plaintiff from divulging to any "outlet, including newspapers, television stations, and radio stations . . . the fact or existence of this Settlement Agreement, and . . . any aspect of any of the operations and activities of [the Defendants] as alleged by [Plaintiff] in the Action." *Id.* ¶ 6. The parties note that they "are willing to strike [the] provision[s] . . . should the Court deem it necessary." Joint Letter at 2.

The Court concludes that the provisions should be struck. Non-disparagement clauses and confidentiality provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers . . . who can then use that information to vindicate their statutory rights." *Gaspar*, 2015 WL 7871036, at *3. As to the non-disparagement clause, the "phrasing seems potentially overbroad, and is very similar to language" the Court has previously rejected as limiting the dissemination of truthful information.

---

[2] Ordinarily, the Court might assume that, presented with documentation, the Plaintiff simply agreed that many allegations in the Complaint were unsupportable. That may be what happened here; however, the timeline, as presented in the joint letter, indicates that the Plaintiff filed his Complaint *after* reviewing the Defendant's documents, and *after* first arriving at the $1,200 number. Joint Letter, at 1. Thus, the Court has no clear explanation before it for the discrepancy between the allegations in the Complaint and the Plaintiff's ultimate position as to the Defendants' maximum liability.

*Id.* Though the parties argue that the clause should be interpreted in conjunction with the more limited confidentiality provision, Joint Letter at 2, there is nothing in the settlement that requires such an interpretation. As such, the parties are instructed to either remove the provision or "narrowly tailor it to allow Plaintiffs to discuss their litigation of this case." *Id.*; *see also Lopez*, 96 F. Supp. 3d at 180 n.65 ("It is important to note that not *every* non-disparagement clause in an FLSA settlement is *per se* objectionable. As consideration for a settlement payment, plaintiffs may contract away their right to say things that are insulting or calumnious about the defendants.").

As to the confidentiality provision, the parties are correct that, insofar as the provision permits the Plaintiff to discuss the settlement with other employees, and only limits what he may say to "media outlet[s]," SA ¶ 6, it is narrower than many of the confidentiality provisions that courts have previously struck down in this district, *compare, e.g.*, *Guerra-Alonso v. W. 54 Deli, Corp.*, No. 14-CV-7247 (WHP), 2015 WL 3777403, at *1 (S.D.N.Y. May 22, 2015) (describing a provision that prevented the plaintiff from discussing the terms of the settlement with almost anyone). Nevertheless, the Court is concerned that the provision remains too broad. Second, even if narrow, the confidentiality provision here still suffers from many of the problems such provisions can create, including the potential to "hand[] [an employer] an important retaliatory tool in the form of subsequent breach of contract suits." Elizabeth Wilkins, *Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109, 134 (2013). Finally, the parties have presented no argument that the provision is necessary, and indeed have specifically represented that the settlement may be

approved without it.  Joint Letter at 1.  Thus, the Court orders that the parties remove the confidentiality provision from a revised settlement.[3]

### C. Attorneys' Fees and Costs

Finally, the settlement provides that Plaintiff will receive half of the settlement, and the rest will go to attorney's fees and costs.  Joint Letter at 2.  Specifically, $2,500 will go to the Plaintiff, $400 will go to pay for the filing fee,[4] and the remaining $2,100 will go to attorney's fees.  SA ¶2; Dkt. No. 11, Ex. 2, at 2.  The latter number represents approximately 46% of the settlement, net costs.[5]  In support of the allocation of attorney's fees, Plaintiff's counsel provides billing records indicating that he worked a total of 12.5 hours on the case, which, multiplied by his listed $450 dollar hourly partner rate, results in a lodestar calculation of $5,625, well in excess of the $2,100 attorney's fee disbursement.  Dkt. No. 11, Ex. 2, at 1-2; *see also Gaspar*, 2015 WL 7871036, at *1 ("In reviewing the reasonability of attorney's fees requested, the Court looks to 'the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" (quoting *Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015)).

---

[3] In the alternative, the parties may keep the provision but submit additional authority and argument supporting the proposition that the clause, as included in the proposed settlement agreement, is fair and reasonable. *See Gaspar*, 2015 WL 7871036, at *2.

[4] The parties list only one cost, the filing fee, which the Court deems reasonable. *See* Dkt. No. 11, Ex. 2, at 2.

[5] The Court agrees with other judges in this district that, when assessing the reasonableness of an attorney's fee on the basis of its percentage of the settlement, it is fairer to look to the percentage of the settlement net costs. *Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *1 & n.1 (S.D.N.Y. Aug. 31, 2015).

As an initial matter, the Court notes that it is not convinced that this lodestar is entirely reasonable. It is indeed the case, as Plaintiff's counsel observes, that at least one court in this district recently approved a $450.00/hr partner rate for Mr. Kraselnik. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015). However, that case involved a team of litigators, including multiple associates, with billing hours allocated accordingly. *See id.* at 28-29. In contrast, Mr. Kraselnik appears to have handled this case alone, and thus billed every hour himself. It is one thing to claim an above-market partner rate in a case where work is divided among partners and associates in reflection of the work's relative importance and difficulty. However, such a rate may not always be reasonable when there is no such division of labor, and the Court observes that at least *some* of the tasks for which Mr. Kraselnik personally billed $450/hr might have been easily manageable by an associate or, in some cases, a para-legal, at a lower billing rate. *See Zhang*, 2015 WL 5122530, at * 2 (observing that "it is not appropriate, for purposes of gauging the reasonable fee award, to assign partner-level billing rates to tasks that a first—or second-year associate could easily perform"); *see also* Dkt. No. 11, Ex. 2, at 1-2 (billing, *inter alia*, for arranging a conference call and filing the complaint). The Court need not scrutinize whether the lodestar here is justified, however. Even if the Court were to reduce the hourly rate to $350/hr and reduce the hours billed to 10 hours, the lodestar would still be $3500—greatly in excess of the fee disbursement. Ordinarily, the Court would approve a lodestar multiplier of .71 without difficulty. *See Zhang*, 2015 WL 5122530, at *4.

In this case, however, the fee represents 46% of the net settlement fund. "Except in extraordinary cases, courts in this District [evaluating the reasonableness of FLSA settlements] have declined to award fees representing more than one-third of the total settlement amount." *Zhang*, 2015 WL 5122530, at *4 (collecting cases); *accord Santos*, 2015 WL 9077172, at *3. It

is true that various courts in this district have held that, in the context of "an individual FLSA action where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney's fees'" than in the context of a collective or class action. *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Misiewicz v. D'Onofrio Gen. Cont. Corp.*, No. 08-cv-4377 (KAM)(CLP), 2010 WL 2545439, at *5 (May 17, 2010)); *see also Zamora v. One Fifty Fifty Seven Corp.,* No. 14 CIV. 8043 (AT), 2016 WL 1366653, at *2 (S.D.N.Y. Apr. 1, 2016) (noting that "although the proposed award [was] greater than Plaintiffs' recovery, the Court [saw] no reason to reduce the fee where . . . Plaintiffs [would] receive 100% of their estimated damages, there [were] no opt-in plaintiffs, the case [was] not a collective action, and there existe[d] no 'basis to presume conflict and antagonism between the plaintiff and his attorney.'" (quoting *Picerni v. Bilingual Seit & Preschool Inc.,* 925 F. Supp.2d 368, 377 n.3 (E.D.N.Y.2013)).  However, judges in this district have nevertheless, in the context of *individual* FLSA settlements, cited the 33% number to reduce negotiated fee awards, *see, e.g.*, *Lazaro-Garcia v. Sengupta Food Servs.,* No. 15-CV-4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (holding a court must "separately assess the reasonableness of plaintiff's attorneys, even when the fee is negotiated as part of a settlement rather than judicially determined," and finding a fee award of 39%, in an individual FLSA action, excessive), and decisions that have eschewed such reduction have emphasized the fact that the individual plaintiff received 100% of the damages according to his maximum possible recovery estimates, *see Zamora*, 2016 WL 1366653, at *3, or that the fee award was based on a contingency fee arrangement, *see Grisel Nanduca, et al. v. R & A King Corp., et al*, 15-cv-7669, at 2 (JMF) (Apr. 13, 2016) (Dkt. No. 27) (unpublished order).

Mr. Kraselnik does not directly address this precedent in the joint letter, but he does argue that the unusually high percentage is justified "because of the relatively low-demand combined with the ambiguity of the case." Joint Letter at 2. The joint letter indicates that the Defendants' liability was not "clear-cut on the face of the checks but instead was based upon a 'he-said, she-said' situation in which Defendants had excellent documentation." *Id.* Mr. Kraselnik represents, accordingly, that "[b]ased on [his] experience . . . , most lawyers would probably not have filed a complaint in this case." *Id.*; *see also Santos*, 2015 WL 9077172, at *2 (listing as factors relevant to the reasonableness of a fee award in a FLSA case, *inter alia*, "the time and labor required," "the amount involved in the case and the results obtained," and "the 'undesirability' of the case"). Though these representations provide some support for the higher fee award, other factors weigh against awarding the requested fees, including that this case settled fairly quickly, *see Lazaro-Garcia*, 2015 WL 9162701, at *4, and that the Plaintiff is not receiving 100% of his maximum damages estimate. The Court thus reduces the fee award to approximately 39% of the net settlement, or $1,800—a higher percentage than is customary in this district in reflection of the unique circumstances of this case and the fact that it is an individual FLSA action, but low enough to serve the purposes of the FLSA. *See Zhang*, 2015 WL 5122530, at *4 (emphasizing, in an individual FLSA case, that "barring unusual circumstances . . ., a fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs"); *Santos*, 2015 WL 9077172, at *3 (observing that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application" (internal quotation marks omitted)). The balance should be allocated to the Plaintiff. *See Zhang*, 2015 WL 5122530, at *4.

### III.    CONCLUSION

In short, though it seems likely that much of the settlement is indeed fair and reasonable, the Court cannot approve the settlement as currently proposed.  As a result, the parties are hereby ordered to meet and confer about the settlement and file a revised settlement proposal, consistent with this order, on or before March 1, 2017.

SO ORDERED.

Dated: February ____, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge

11